UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM RAY,
a/k/a WILLIAM R. KING,

                    Petitioner,

v.                                  Case No. 3:10-cv-539-J-34MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,
                    Respondents.
_____

**ORDER**

**I. Status**

Petitioner William Ray, an inmate of the Florida penal system, initiated this action by filing a pro se Petition for Writ of Habeas Corpus (Doc. #1) under 28 U.S.C. § 2254 on May 17, 2010, pursuant to the mailbox rule. Ray filed an Amended Petition (Doc. #14) on October 19, 2010, in which he challenges a 2000 state court (Putnam County, Florida) judgment of conviction for first degree murder and robbery. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Response to Petition (Response) (Doc. #21) with exhibits (Resp. Ex.). On December 14, 2010, the Court entered an Order to Show Cause and Notice to Petitioner (Doc. #18), admonishing Ray regarding his obligations and giving Ray a time frame in which to submit a reply. Ray submitted a brief in reply on July 25, 2011. See Petitioner's

Traverse to State's Response (Reply) (Doc. #31).  This case is ripe for review.

## II. Procedural History

On July 1, 1999, the State of Florida charged William Ray (a/k/a William R. King) with first degree murder and robbery. Resp. Ex. 1 at 35, Superceding Indictment.  After jury selection, Ray proceeded to a jury trial.  Resp. Ex. 2, Transcripts of the Jury Trial (Tr.).  At the conclusion of the trial, a jury found Ray guilty of first degree murder and robbery, as charged.  Resp. Ex. 1 at 433, Verdict; Tr. at 1008.  On June 15, 2000, the trial court sentenced Ray to a term of life imprisonment without eligibility for parole (count one) and a term of fifteen years of imprisonment (count two), such term to run concurrently to the term imposed for count one.  Resp. Ex. 1 at 726-32, Judgment; 733-35, Sentencing Order.

On appeal, Ray, through counsel, filed an Initial Brief, arguing that the trial court erred when it: permitted the State's use of peremptory challenges to strike members of a minority class from the jury where there was an insufficient determination as to possible race-based motivation for the strikes (ground one); denied Ray's motion for a mistrial, after the State's witness, a layman, was allowed to offer an expert opinion as to Ray's state of mind at the time of the charged offense (ground two); and denied Ray's motion for change of venue, where the victim was well known within

the community and when there was inflammatory pretrial publicity regarding the murder (ground three). Resp. Ex. 3, Initial Brief of Appellant.  The State filed an Answer Brief.  Resp. Ex. 4.  On August 7, 2001, the appellate court affirmed Ray's conviction and sentence per curiam without issuing a written opinion, see King v. State, 793 So.2d 969 (Fla. 5th DCA 2001); Resp. Ex. 5, and the mandate issued on August 24, 2001.[1]  Ray did not seek review in the United States Supreme Court.

On August 16, 2002, Ray filed a pro se motion for post conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  Resp. Ex. 6.  The court, on September 13, 2002, dismissed the motion without prejudice to his right to refile. Resp. Ex. 7. On May 7, 2003, Ray filed an amended motion, see Resp. Ex. 8, and the trial court dismissed his motion, finding that it lacked the required signed oath, see Resp. Ex. 9.  On May 29, 2003, Ray filed another pro se motion for post conviction relief (Rule 3.850 motion).  Resp. Ex. 10.  In this request for post conviction relief, Ray asserted that defense counsel was ineffective because he failed to: conduct a voir dire of interpreter Mary Garcia (ground one); investigate, discover and impeach the testimony of Gilberto Gonzales and depose, call or impeach Susan Oliver, Samuel Lee Mays, Clint White, Sylvia Glenn, and Belinda Sellers (ground

---

[1] Online docket, William Ray King v. State of Florida, Case No. 5D00-1904, website for the Fifth District Court of Appeal (http://www.5dca.org).

two); preserve for appeal the court's denial of Ray's motion for change of venue (ground three); preserve for appeal the court's denial of Ray's motion for a mistrial (ground four); conduct an independent investigation relating to the State's medical expert and obtain an expert for DNA testing (ground five); ensure Ray's presence at the scheduled depositions and the swearing in of the jury venire (ground six); properly argue the motion for judgment of acquittal (ground seven); present mitigating evidence during the sentencing phase (ground eight); determine Ray's competency to stand trial (ground nine); develop a viable defense strategy (ground ten); present mitigating evidence of Ray's background (ground eleven); and preserve errors for appeal (ground twelve). Ray also asserted that counsel was ineffective due to: cumulative errors (ground thirteen) and abandonment after trial (ground fourteen). Additionally, Ray claimed that the trial court erroneously denied his motions at trial (ground fifteen).

On June 10, 2003, the court denied in part the Rule 3.850 motion as to Ray's assertions, except his claim relating to counsel's alleged failure to depose Sylvia Glenn and Belinda Sellers. Resp. Ex. 11. The State responded to Ray's assertion that counsel failed to depose Glenn and Sellers. Resp. Ex. 12. On August 25, 2003, the court denied the Rule 3.850 motion as to that remaining claim. Resp. Ex. 13. On appeal, Ray filed a brief, see Resp. Ex. 14, and the State notified the court that it did not

intend to file an answer brief, see Resp. Ex. 15.  The appellate court affirmed the trial court's decision per curiam on January 6, 2004, see Ray v. State, 864 So.2d 428 (Fla. 5th DCA 2004); Resp. Ex. 16, and later denied Ray's motion for rehearing, see Resp. Exs. 17; 18.  The mandate issued on January 23, 2004.[2]

Over one year later, on June 2, 2005, Ray filed a pro se motion for DNA testing pursuant to Florida Rule of Criminal Procedure 3.853 (Rule 3.853 motion).  Resp. Ex. 19.  In that post conviction request, Ray asserted that the following physical evidence should have been tested for DNA: the victim's blood, hair and skin, and the clothing of Gilberto Gonzales, Susan Oliver, and Ray.  The court ordered the State to respond, see Resp. Ex. 20; the State responded, see Resp. Ex. 21; and Ray replied, see Resp. Exs. 22; 23.  On September 15, 2005, the court denied the Rule 3.853 motion, see Resp. Ex. 24, and later denied Ray's motion for rehearing, see Resp. Exs. 25; 26.  On appeal, Ray filed a brief, see Resp. Ex. 28, and the State notified the court that it did not intend to file an answer brief, see Resp. Ex. 29.  The court directed the State to respond, see Resp. Ex. 30, and the State responded, see Resp. Ex. 31.  On May 9, 2006, the appellate court affirmed the trial court's decision per curiam, see Ray v. State, 932 So.2d 212 (Fla. 5th DCA 2006); Resp. Ex. 32, and later denied

---

[2] See http://www.5dca.org, online docket, William Ray v. State of Florida, Case No. 5D03-3290.

Ray's motion for rehearing, <u>see</u> Resp. Exs. 33; 34.  The mandate issued on June 30, 2006.[3]  Resp. Ex. 35.

More than two years later, on September 12, 2008, Ray filed a <u>pro</u> <u>se</u> petition for writ of habeas corpus, <u>see</u> Resp. Ex. 36, and the appellate court denied the petition on October 3, 2008, <u>see</u> Resp. Ex. 37.  A year later, on October 2, 2009, Ray filed another <u>pro</u> <u>se</u> petition for writ of habeas corpus.  Resp. Ex. 38.  In that petition, Ray asserted that his conviction was obtained through fraud upon the court; defense counsel and the prosecutor denied him a fair trial; and the prosecutor knowingly presented false testimony as to Gilberto Gonzales, Sherry Reinhold, Samuel Lee Mays, and Clint White.  Additionally, Ray claimed his innocence based on newly-discovered evidence from the September 2009 trial of co-defendant Susan Oliver that was neither presented at his trial nor addressed by his defense counsel.[4]  On October 23, 2009, the circuit court denied the petition.  Resp. Ex. 39.  On appeal, the appellate court dismissed Ray's appeal as untimely and for lack of jurisdiction on February 25, 2010.[5]  Resp. Ex.  42.

---

[3] <u>See</u> http://www.5dca.org, <u>William Ray a/k/a William King v. State of Florida</u>, Case No. 5D05-4074.

[4] According to Ray, at Oliver's 2009 trial, Dr. Steiner testified that the victim was asleep when she was murdered.  <u>See</u> Resp. Ex. 38 at 7; attached Exhibit A, Transcript at 651.

[5] <u>See</u> http://www.5dca.org, <u>William Ray v. State of Florida</u>, Case No. 5D09-4534.

### III. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 imposes a one-year statute of limitations on petitions for writ of habeas corpus.  Specifically, 28 U.S.C. § 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).  Ray asserts that the one-year limitations period begins based on § 2244(d)(1)(D).[6]  Thus, for this Court's analysis, the Court will assume that the Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.  The pertinent facts of this case are fully developed in the record before the Court.  Because this Court can "adequately assess [Petitioner's] claim without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004), an evidentiary hearing will not be conducted.

---

[6] Ray states that he did not become fully aware of Dr. Steiner's testimony (that the victim was asleep when she was murdered) from Oliver's trial until October 2009.  See Reply at 7, 13, 16.

## V. Exhaustion/Procedural Default

There are prerequisites to a federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971)) To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S.Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S.

838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

The United States Supreme Court discussed the doctrine of procedural default:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[7] supra, at 747–748, 111 S.Ct. 2546; Sykes,[8] supra, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S.Ct. 2546.

---

[7] Coleman v. Thompson, 501 U.S. 722 (1991).

[8] Wainwright v. Sykes, 433 U.S. 72 (1977).

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).  Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice.  Maples v. Thomas, 132 S.Ct. 912, 922 (2012) (citations omitted); In Re Davis, 565 F.3d 810, 821 (11th Cir. 2009) (citation omitted).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if he can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result.  The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim.  "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."  Carrier, 477 U.S. at 496, 106 S.Ct. at 2649.[9]  "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence.  Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[9] Murray v. Carrier, 477 U.S. 478 (1986).

<u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010), <u>cert</u>. <u>denied</u>, 131 S.Ct. 647 (2010).  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)), <u>cert</u>. <u>denied</u>, 535 U.S. 926 (2002). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderson v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324).  With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected.  <u>Schlup</u>, 513 U.S. at 324.

## VI. Findings of Fact and Conclusions of Law

Claiming his innocence based on newly-discovered evidence from Oliver's trial, Ray asserts that the prosecutor fraudulently misrepresented the evidence at his trial.  He explains:

> [Ray] had received a part of his co-defendant's trial transcripts.  Dr. Steiner medical examiner who stated during [Ray's] co-defendant's jury trial that the murdered victim was murdered while she was asleep, and he explained his medical findings.  This information was not revealed during [Ray's] jury trial and the State had knowledge of this fact but mislead [Ray's] jury to believe that the victim and [Ray] were in the hallway fighting and that [Ray] had suffered a great amount of scratch marks on his face.  The State had motioned the state court for video tape from a motel and Da[y]tona National Airport showing both [Ray] and Susan Oliver of [sic] who was named as his co-defendant.  The

12

> investigating police claimed they lost such
> tape that would have shown that [Ray] never
> had any scratches or abrasions on his face.
> [Ray] had explained where he got both the
> money etc. from of [sic] who was the State's
> key-witness.

Amended Petition at 5.  As acknowledged by Ray, <u>see</u> <u>id</u>. at 6, he raised this claim in his state petition for writ of habeas corpus, <u>see</u> Resp. Ex. 38; the circuit court denied the petition, <u>see</u> Resp. Ex. 39; and the appellate court dismissed Ray's appeal as untimely and for lack of jurisdiction, <u>see</u> Resp. Ex. 42.

Respondents contend that the claim was not properly exhausted, and therefore is procedurally barred since it was raised in a procedurally incorrect manner in state court.  <u>See</u> Response at 6-8. This Court agrees.  Ray has not shown either cause excusing the default or actual prejudice resulting from the bar.  Moreover, he has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

Even assuming that the claim is not procedurally barred, Ray, nevertheless, is not entitled to relief on the basis of this claim because the State presented ample evidence to support Ray's conviction.  The Due Process Clause of the Fourteenth Amendment requires the State to prove each element of the offense charged beyond a reasonable doubt.  <u>Thompson v. Nagle</u>, 118 F.3d 1442, 1448 (11th Cir. 1997) (citing <u>Jackson v. Virginia</u>, 443 U.S. 307, 314 (1979)), <u>cert</u>. <u>denied</u>, 522 U.S. 1125 (1998).  In reviewing the sufficiency of evidence, "this court must presume that conflicting

inferences to be drawn from the evidence were resolved by the jury in favor of the State." Thompson, 118 F.3d at 1448 (citing Machin v. Wainwright, 758 F.2d 1431, 1435 (11th Cir. 1985)). Jackson v. Virginia "provides the federal due process benchmark for evidentiary sufficiency in criminal cases." Williams v. Sec'y for Dept. of Corr., 395 F. App'x 524, 525 (11th Cir. 2010) (per curiam) (citing Green v. Nelson, 595 F.3d 1245, 1252-53 (11th Cir. 2010)) (not selected for publication in the Federal Reporter), cert. denied, 131 S.Ct. 1488 (2011).  In accordance with this authority, the relevant question is whether any rational jury, after viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the charged offenses beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 319.

At Ray's trial,[10] two women testified that they found the deceased victim[11] in her bed at approximately 8:00 a.m. on April 7, 1999. Tr. at 505-06 (Ginger Tenant's testimony); 555 (Janet Ross' testimony). Tenant testified that she saw scratches on the victim's neck and "blood and saliva bubbling out of her mouth . . . ." Id. at 505-06.  Dr. Steiner, the medical examiner, testified that the victim had died by asphyxiation due to manual strangulation, or "in

---

[10] On direct appeal, Ray, through counsel, provided a summary of the testimony at trial. See Resp. Exs. 3 at 3-6.  Therefore, the Court will set forth only a brief summary of the testimony.

[11] The victim was the Director of the Caring Center, a group home for the needy.

lay terms, she was choked to death." Id. at 611. Steiner estimated that the time of death was between 11:00 p.m. on April 6th and 3:00 a.m. the next morning. Id. at 616, 620. The investigating officers said there were no signs of a forced entry or physical struggle. Id. at 520-21, 666. Ross and Nathaniel Courtney (the victim's son) testified that they saw Ray at the Caring Center on April 6th after 10:00 p.m. Id. at 527-29, 549-51. Gilberto Gonzales, one of the residents at the Caring Center, testified that he saw Ray leaving the victim's room later that same evening. Id. at 581, 586-88.

Officer Alex Sharp, who investigated the homicide, testified that there were six residents living at the Caring Center at the time of the murder. Id. at 826. Sharp stated that all six residents, including Gilberto Gonzales, were suspects; as part of the investigation, Sharp was able to immediately locate all the residents, except Ray. Id. at 826-27. Sharp and Gonzales acknowledged that Gonzales voluntarily gave up blood and tissue samples and relinquished his clothing to police; Sharp noted that Gonzales had no visible injuries. Id. at 588-89, 827-28.

Sherry Reinhold testified that she saw Ray and Oliver at a motel on April 7th at approximately 3:00 a.m. when Oliver bought cocaine. Id. at 676. Then, at another motel several hours later, Reinhold saw Oliver counting "piles" of money that was spread out on the bed; Reinhold stated that Ray arranged to pay for sex with

her.  _Id_. at 682, 685-86.  Reinhold noticed scratch marks on Ray's face.  _Id_. at 686-87.  She testified that Ray repeatedly said "he wanted to get out of town, he done something really bad."  _Id_. at 691.  Additionally, Raymond Harris testified that, when he delivered cocaine to Oliver and Ray on April 7th, he saw four or five "stacks" of money on a table.  _Id_. at 717-18.  Harris stated that Ray told him: "I'm in trouble, I'm fixing to go . . . ."  _Id_. at 720.  Moreover, Lorri Ann King testified that she was with Reinhold for the delivery of cocaine to Oliver and Ray and heard Ray say: "I think I fucked up.  I fucked up.  We got to leave town."  _Id_. at 708.

Rick Mather, an employee with Delta Airlines, testified that Oliver and Ray purchased two one-way tickets from Daytona Beach, Florida, to San Diego, California, for $946.00 per ticket and paid cash.  _Id_. at 724.  Oliver flew to San Diego; however, Ray never boarded the plane because he was unable to produce identification prior to boarding.  _Id_. at 725.  Officer Manual Hernandez testified that, on April 9th in San Diego, he arrested Oliver, who had $2,454.33 in cash.  _Id_. at 731.  George Dysico, a Special Agent with the Federal Bureau of Investigation, testified that he arrested Ray in Washington, D.C., on May 21, 1999.  _Id_. at 794, 799-800.

Additionally, inmate Samuel Lee May testified that Ray told him he had done something that he regretted, that he knocked out

Mrs. Blue, the victim, and took money. <u>Id</u>. at 845-47. Additionally, inmate Clint White testified that Ray told him that he only told May that he had knocked out Mrs. Blue and took her money. <u>Id</u>. at 853. White also stated that, in referring to Oliver, Ray said that he "should have killed that bitch too." <u>Id</u>.

After viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Ray committed the first degree murder and robbery. The State had substantial evidence against him. Thus, viewing the evidence in the light most favorable to the prosecution, there was sufficient evidence to support the conviction for first degree murder and robbery. Competent evidence of the elements of the offenses was introduced at trial, and no due process violation occurred. The jury was entitled to believe the State witnesses' accounts of what transpired. Therefore, Ray is not entitled to habeas relief.

### VII. Certificate of Appealability<br>Pursuant to 28 U.S.C. § 2253(c)(1)

If Ray seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). To make this substantial showing, Ray "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282

(2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id</u>. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Amended Petition (Doc. #14) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3. If Ray appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court

18

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case.  Such termination shall serve as a denial of the motion.

4.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 30th day of July, 2013.

MARCIA MORALES HOWARD
United States District Judge

sc 7/15
c:
William Ray, a/k/a William R. King
Ass't Attorney General (Golden)